**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold KAUFMAN, Defendant-Appellant.**

**No. 16016.**

United States Court of Appeals Seventh Circuit.

March 13, 1968.

Rehearing Denied April 19, 1968.

William C. Erbecker, Indianapolis, Ind., Harold Kaufman, in pro. per., for appellant.

K. Edwin Applegate, U. S. Atty., Edward F. Kelly, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before HASTINGS, Chief Judge, KNOCH, Senior Circuit Judge and CUMMINGS, Circuit Judge.

HASTINGS, Chief Judge.

Harold Kaufman appeals from a judgment of conviction entered after a jury trial on an indictment charging him with robbery of a branch of the First Federal Savings & Loan Association of Indianapolis, Indiana on November 20, 1963, in violation of Title 18, U.S.C.A. § 2113(a). Trial was held in the United States District Court for the Southern District of Indiana.

The indictment against appellant was returned on March 26, 1964, and he was brought before the district court for arraignment on May 21, 1965. Trial began on February 28, 1966.

Appellant contends the delay of approximately fourteen months between indictment and arraignment denied him his federal constitutional right to a speedy trial. Cf. United States Constitution, Amendment VI; Rule 48(b), F.R.Crim. P., 18 U.S.C.A.

He alleges that, during the entire period, he was in federal custody and available for arraignment. That during this time he was repeatedly approached by agents of the Federal Bureau of Investigation who attempted, by means of threats and promises, to induce him to plead guilty pursuant to Rule 20, F.R. Crim.P., 18 U.S.C.A.

He further contends that because of such delay he was unable to locate a key witness at time of trial and was unable to adequately prepare a defense of insanity.

These allegations and contentions were contained in a motion to dismiss the indictment, filed May 28, 1965. The motion was denied after a hearing. Twelve witnesses were heard, including appellant and the seven FBI agents who talked with him during his pre-arraignment confinement.

The court made the following findings of fact. Appellant remained at large until December 16, 1963, when he was arrested for robbery of a federal savings and loan association in Missouri. He was indicted in Missouri on the federal charges and ordered to the United States Medical Center at Springfield, Missouri for an examination to determine his competency to stand trial on the Missouri federal charge. Appellant remained at the Medical Center from January 28, 1964 until March 20, 1964.

Following return of the indictment in the instant case, the United States Marshal and the United States Attorney for the Southern District of Indiana sent copies of the Indiana indictment to their counterparts in the Eastern District of Missouri.

Appellant's trial in Missouri, originally set for May 4, 1964, was delayed for further psychiatric examination of appellant. He was brought to trial on August 24, 1964 and was convicted.

Following his conviction in Missouri, appellant was removed to New York, where state charges were pending against him. He was tried on those charges in New York and was convicted.

The United States Marshal for the Southern District of Indiana sent a copy of the Indiana indictment and a detainer against appellant to the marshal for the Southern District of New York.

On January 28, 1965, appellant was transferred to the United States Penitentiary at Atlanta, Georgia. A writ of habeas corpus ad prosequendum was issued, and appellant was returned to Indiana.

The court further found that at all times appellant had been advised of his constitutional rights by the FBI agents and that no threats or promises had been made in an attempt to induce him to plead guilty. It found that he had not lost contact with his key witnesses and that reports of his two psychiatric examinations in Missouri were available to him.

Based on these findings, the court concluded that there had been no unreasonable delay in arraigning appellant, that he had not been prejudiced and that his right to a speedy trial had not been violated.

We have examined the evidence before the court on appellant's motion to dismiss and have found ample support for the court's findings of fact.

Both appellant and appellee ignored the controlling authority in their briefs and arguments. The Supreme Court's most recent consideration of the Sixth Amendment's requirement of a speedy trial was two years ago in United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). Defendants in that case had been indicted and convicted in December, 1962 for selling narcotics in violation of 26 U.S.C.A. § 4705(a). Their convictions had been vacated in early 1964 by the trial court in light of this court's prior reversal of a conviction in a similar case. They were promptly re-arrested and indicted for the same narcotics sales, although the charges were somewhat different. On defendants' motions, the district court dismissed the indictments on the ground that defendants had been denied their Sixth Amendment right to a speedy trial. The Government appealed directly to the Supreme Court, pursuant to 18 U.S.C.A. § 3731.

The Supreme Court reversed and restated the principles to be applied under the Sixth Amendment:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that

long delay will impair the ability of an accused to defend himself * * *. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances * * *. The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. '[T]he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041." 383 U.S. at 120, 86 S.Ct. at 776.

■ The Supreme Court expressly rejected the argument, which appellant here makes, that prejudice resulting from delay need not be shown: "Surely appellees could claim no automatic violation of their rights to a speedy trial if there had been no charges or convictions in 1962 but only the § 4704 indictment in 1964." 383 U.S. at 122, 86 S.Ct. at 777. To come within the protection of the Sixth Amendment's speedy trial requirement the accused must show not only that there was unreasonable delay, but also that the delay prejudiced him or was purposeful or oppressive. Fleming v. United States, 1 Cir., 378 F.2d 502 (1967); Mathies v. United States, 126 U.S.App.D.C. 98, 374 F.2d 312 (1967); United States v. Sanchez, 2 Cir., 361 F.2d 824 (1966).

In United States v. Ewell, supra, the delay was pre-indictment, while here it was post-indictment. However, in both cases the delay was after arrest and the accused was incarcerated during the period of delay. If anything, post-indictment delay may be less harmful than pre-indictment delay, since the accused has notice of the specific charges against him and can begin preparing his defense. We hold *Ewell* controlling in this case.

■ The delay of fourteen months in arraigning appellant was not unreasonable under the circumstances. At the time of his indictment in Indiana, appellant was under federal indictment in Missouri, where he was held, and he faced state felony charges in New York. He was promptly tried in Missouri and New York and was returned to Indiana from the federal penitentiary at Atlanta within four months of his transfer from New York.

Neither has appellant shown prejudice resulting from the delay. He was aware of the charges against him in March, 1964, when the indictment was returned, and could have begun the preparation of his defense. The Government advised him months before trial as to the location of his witnesses or the means by which they could be located. Reports of the psychiatric examinations conducted in Missouri within a short time of the Indiana robbery were available to him.

■ Appellant's argument that he was denied his right to counsel in FBI interviews concerning the entry of a guilty plea, pursuant to Rule 20, is frivolous. He did not plead guilty. In any event, the evidence sustains the finding that he was not denied his right to counsel.

Appellant contends the trial court erred in denying his motion to suppress evidence. In his motion of February 7 and his amended motion of February 23 he asserted, as ground for suppression, the absence of probable cause for arrest. At the hearing on his motion and on appeal here he placed emphasis on the denial of right to counsel and right to remain silent as a ground for suppressing evidence. After a hearing on the motion, the trial court denied it from the bench. Through an apparent oversight findings were not entered.[1]

■ The trial court's ruling is supported by the evidence. There was probable cause for the arrest. The Alton, Illinois police officer who apprehended appellant testified that he arrested appellant for reckless driving in the officer's presence, following a traffic accident. No contrary evidence was introduced. Furthermore, although appellant fails to specify the evidence he contends

1. Government counsel were instructed to tender findings for the court's consideration, but apparently failed to do so.

is inadmissible, we have examined the record and have found no evidence that would have been tainted had the arrest been unlawful.

Apparently the only real issue before us, in reviewing the trial court's denial of appellant's motion, is whether, as he charges, an oral admission used at trial was made before appellant was warned of his rights and after he had been refused permission to call his attorney. The FBI agent to whom the admission was made testified that he advised appellant of his rights before the admission, that appellant did not ask to see an attorney until after the admission, and that appellant was permitted to call his New York attorney as soon as he requested permission to do so. Appellant's testimony contradicted the agent's on each of these points.

■■ The trial court's ruling on the motion was essentially a credibility resolution. Credibility resolutions are within the province of the trial court. Miller v. United States, 8 Cir., 354 F.2d 801 (1966); United States v. Hilbrich, 7 Cir., 341 F.2d 555, cert. denied, 381 U.S. 941, 85 S.Ct., 14 L.Ed.2d 704, reh. denied, 382 U.S. 874, 86 S.Ct. 16, 15 L.Ed.2d 117 (1965), 384 U.S. 1028, 86 S.Ct. 1906, 16 L.Ed.2d 1047 (1966); United States v. Vita, 2 Cir., 294 F.2d 524 (1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed. 2d 788 (1962).

■ Appellant contends that the trial court erred in denying his motion for a hearing on his mental competency to stand trial. The applicable statute is 18 U.S.C.A. § 4244, which provides, in part, that upon the filing of a motion for judicial determination of the accused's competency to stand trial, "the court shall cause the accused * * * to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court * * *. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing * * *." Pursuant to this provision, on appellant's motion, the court appointed a psychiatrist to examine him. The psychiatrist found that appellant was a sociopathic personality with paranoid state, but that this condition did not preclude his understanding the nature of the charges against him and assisting in his defense. His opinion was that appellant was competent to stand trial. On the basis of this report, the trial court was not required to hold a hearing. See, Stone v. United States, 9 Cir., 358 F.2d 503 (1966); Caster v. United States, 5 Cir., 319 F.2d 850 (1963), cert. denied, 376 U.S. 953, 84 S.Ct. 972, 11 L.Ed.2d 973 (1964).

■ Appellant contends the trial court violated his Sixth Amendment rights by denying his motion for preparation of a daily transcript of the evidence for his use during the trial. He cites no case recognizing such a right, and we have discovered none. Appellant and his attorney were, of course, present throughout the trial. We find no constitutional deprivation here.

Appellant contends he was prejudiced by the trial court's refusal to order the subpoenaing of certain witnesses pursuant to Rule 17(b), F.R.Crim.P., 18 U.S. C.A. He has failed to call this court's attention to a single instance in which his Rule 17(b) motions were denied.

By motion of January 24, 1965 and corrected motion of February 4, 1965, appellant requested that fourteen witnesses be subpoenaed. At a hearing on February 9, at which the Government opposed these motions, appellant *consented* to a limitation on the number of witnesses to be subpoenaed under Rule 17(b) on the issue of sanity. That limiting agreement provided for the subpoenaing of appellant's sister and brother, two psychiatrists and five lay witnesses.

On February 28, the day trial began, appellant moved that two additional witnesses be substituted for one who could not be located. The trial court granted this motion on the same day.

Further Rule 17(b) motions were made and granted on March 2 and March 4.

On March 7, appellant moved to subpoena a psychologist after the Government objected to the admission of a psy-

chiatric report on appellant authored by the psychologist. The trial court granted the motion, but excused the witness on March 8 after government and defense counsel stipulated the report's authenticity.

The only negative response by the trial court to appellant's Rule 17(b) motions was its order denying appellant the right to recross-examine two government witnesses, after the Government had closed its case, as a part of appellant's case. The Rule 17(b) subpoenas were granted for other purposes. Appellant had and exercised the right to cross-examine the witnesses when they testified as government witnesses.

The trial court has discretion in ruling on motions to subpoena under Rule 17(b). United States v. Woodard, 7 Cir., 376 F.2d 136 (1967); United States v. Zuideveld, 7 Cir., 316 F.2d 873 (1963), cert. denied, 376 U.S. 916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964); Flanagan v. United States, 5 Cir., 308 F.2d 841 (1962), cert. denied, 374 U.S. 838, 83 S.Ct. 1889, 10 L.Ed.2d 1059 (1963). The denial to appellant of the right to recross-examine government witnesses after the Government rested its case cannot be said to be an abuse of discretion, in the absence of special circumstances not present in this case.

There is no merit in appellant's contention he was prejudiced by the trial court's refusal to instruct the jury that appellant was utilizing the provisions of the Criminal Justice Act of 1964, 18 U.S. C.A. § 3006A.

Appellant questions the *sufficiency of the evidence* on the issue of his sanity at the time of the crime charged. The government's evidence consisted of the testimony of the two FBI agents who questioned appellant immediately after his arrest and subsequently, and the testimony of a staff psychiatrist at the United States Medical Center at Springfield, Missouri, who had examined appellant during his post-arrest confinement at that institution. Each testified that in his opinion appellant was sane on the date of the crime charged.

For the defense, a psychiatrist testified that he had examined appellant in 1960 and determined that appellant was a severe psycho-neurotic unable to control his impulses. The witness had not seen appellant between 1960 and the date he testified. A doctor specializing in psychiatry who had examined appellant at the United States Medical Center in January and February of 1964 was called by appellant. He testified that in his opinion appellant was sane on the date of the crime charged. The remainder of appellant's evidence consisted of the testimony of a number of lay witnesses. Some of them testified to appellant's commission of abnormal acts. Some testified that in their opinion he was sane; others, that he was insane in their opinion.

Considering the evidence, together with the presumption of sanity, we cannot say it raised a reasonable doubt of appellant's sanity. Cf. Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

Appellant contends he was prejudiced by the instructions given by the trial court and by the trial court's refusal to give certain tendered instructions. He contends that the instructions given were correct, but that they failed to cover appellant's entire theory of the case.

Appellant's brief is not clear on this point. He fails to indicate the aspects of his theory that were not covered by the instructions given. The instructions he tendered as set out in his brief *were given verbatim*. If appellant is questioning the adequacy of the instructions on sanity, the answer is that the instructions given accurately stated the sanity rule in this circuit prior to August 24, 1967. See, United States v. Shapiro, 7 Cir., 383 F.2d 680 (1967), and cases cited therein.

The instructions given covered every relevant issue raised by the evidence. We find no error.

Finally, appellant contends he was prejudiced "by [the trial court's] favoritism to the prosecution in ruling upon objections, by its assumption of the role of advocate and by its hostile atti-

tude towards the defense." Appellant points to a single instance in which the court was critical of both defense counsel and government counsel for their adamant refusal to cooperate in a reasonable manner. The record clearly shows that this criticism occurred out of the presence of the jury. There is no showing of prejudice.

We have examined the 2,356 pages of transcript made at two pre-trial hearings and at the nine-day trial. We are unable to find any prejudicial action by the trial court. On the contrary, the trial court was most liberal in protecting appellant from unfairness and exercised commendable patience with both defense counsel and government counsel.

William C. Erbecker, a member of the Indianapolis Bar, represented appellant on the trial and on this appeal pursuant to appointments made under the Criminal Justice Act of 1964. We thank Mr. Erbecker for this service.

Finding no prejudicial error, the judgment of conviction is affirmed.

Affirmed.